Stamatia DELIKOSTA, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare, Defendant.

No. 78 Civ. 3726 (KTD).

United States District Court, S. D. New York.

Sept. 6, 1979.

Poles, Tublin, Patestides & Stratakis, New York City, for plaintiff; Christ Stratakis, Zafiris Hatzidimitriou, Jonathan D. Friedland, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, New York City, for defendant; Janis P. Farrell, Asst. U. S. Atty., New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Stamatia Delikosta, brought this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of a final determination of the Secretary of Health, Education and Welfare [hereinafter referred to as "the Secretary"]. Defendant has moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c); plaintiff has cross-moved for similar relief. In 1931 plaintiff was validly married to Alexandros Delikosta in Greece. Thereafter her husband came to this country and completed all the requirements to obtain Old Age Social Security benefits in 1952. On March 30, 1954, plaintiff's application for wife's insurance benefits was granted. After she informed the Secretary of her husband's death by a letter dated October 30, 1957, Mrs. Delikosta was awarded widow's benefits in lieu of wife's benefits. The date of birth given by plaintiff in her benefit application and accepted by the Administration was January 15, 1889. Mrs. Delikosta was born in Asia Minor and moved to Greece in approximately 1922.

The principal documents relied upon by the applicant in her 1954 application to prove her 1889 date of birth were: (i) a delayed birth certificate obtained upon plaintiff's petition and recorded by the Greek Registrar [sometimes referred to as "Demotologion"] in Chios, Greece in March, 1954; (ii) a March, 1954 Greek court decision, also on plaintiff's petition, confirming this date of birth; and (iii) a baptismal certificate and delayed birth certificate issued by a Greek Church in April, 1954.[1]

Twenty-three years after the original benefit determination, on January 6, 1977, the plaintiff's case was re-opened based upon reports of two recently discovered documents indicating the applicant's date of birth to be 1909. These documents were: (i) the plaintiff's marriage certificate executed in 1931 which stated her age at that time as twenty-two; and (ii) the Chios, Greece Demotologion recorded in 1959 but which was "most likely" copied from the 1914 Demotologion. Transcript at 120. [Hereinafter "Tr."].

Mrs. Delikosta was entitled to benefits only from the date on which she turned

---

1. In addition to these documents, plaintiff submitted several others in connection with the 1977 review indicating an 1889 date of birth. These are: (i) a decision of the Mayor of Chios changing the date of birth on the Registry recorded in 1959 from 1909 to 1889; (ii) a decision of the Normarchy of Chios approving this decision; and (iii) statements from the Greek Consulate in Turkey that there are no Turkish records of the applicant's date of birth.

sixty-five.[2] Based on the 1909 birthdate, the Secretary administratively determined that the plaintiff was entitled to her benefits only as of January, 1969 as opposed to 1954 and that pursuant to Section 204(a) of the Social Security Act, 42 U.S.C. § 404(a), future benefits should be withheld so as to recover the overpayment of approximately $13,000.

After a hearing held on October 17, 1977, the Administrative Law Judge found that 1909 was the plaintiff's correct date of birth and that she obtained the benefit determination by means of fraud or similar fault. He concluded, therefore, that the claimant was not entitled to benefits until January, 1969 and any overpayments to the claimant were recoverable. These findings became the final decision of the Secretary upon approval by the Appeals Council in June, 1978.

The issue to be decided here is whether or not the findings of the Administrative Law Judge below were supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). This determination can be broken down as follows. First, was there substantial evidence of fraud or similar fault of the applicant or others as required by statute and regulation so as to justify a reopening of plaintiff's application twenty-three years after its original determination? Second, was there substantial evidence that plaintiff was at fault and that recovery of the alleged overpayment would not defeat the purposes of the Social Security Act nor be against equity and good conscience? Third, was there substantial evidence that plaintiff's date of birth was in fact 1909 as opposed to 1889? Since I find that there

was not sufficient evidence to justify reopening the case, it is not necessary to make a finding on the second and third items.[3]

Health, Education and Welfare [hereinafter referred to as "HEW"] department regulations provide that a determination may not be re-opened after four years unless it was obtained by fraud or similar fault on the part of the claimant or some other person, 20 C.F.R. § 404.957(c)(1). These terms have been specifically defined in connection with this regulation:

> Fraud exists when a person makes or causes to be made a false statement or a misrepresentation of a material fact for use in determining rights to social security benefits. Similar fault exists when a person makes an incorrect or incomplete statement knowingly or material information is concealed knowingly. However, fraudulent intent is not required.

*Sotiriades v. Mathews*, 178 U.S.App.D.C. 252, 254, 546 F.2d 1018, 1020 (D.C.Cir. 1976).

I find that there was not substantial evidence of fraud or similar fault. In fact, at the hearing the Administrative Law Judge indicated that there was no direct evidence of fraud; there were at best questionable inferences. Tr. 63.

The finding of fraud or similar fault below was based on the plaintiff's failure to produce the 1931 marriage certificate. The record indicates that neither the marriage certificate itself nor an official translation thereof was ever before the Administrative Law Judge. Indeed, the only record of this certificate is an HEW field representative's report. Tr. 119–120. This representative

---

**2.** The age requirement for widow's benefits has recently been reduced from 65 to 60 years of age, 42 U.S.C. § 402(e)(1). However, this change was not effective in 1954 and thus does not apply to Mrs. Delikosta.

**3.** Since there was no substantial evidence of fault, however, it would clearly be contrary to equity and good conscience to re-open the applicant's benefit determination after twenty-three years and require her at the age of 90 (or 70) to forego future payments to recover the alleged overpayment.

Furthermore, there is not substantial evidence that the applicant's date of birth was in fact 1909, as the Administrative Law Judge found. As noted above, the two documents relied on were not even before the Judge at the hearing. In addition, the Registry was recorded in *1959*, five years later than most of the applicant's documents. The record merely reflects the conclusion of the absent Field Representative that this record was "most likely" copied from the 1914 registry.

who did not testify had supposedly examined the certificate in Greece.

Nevertheless, the Administrative Law Judge found that the

> claimant's representations alleging a birth date of January 15, 1889 in disregard of the earliest document extant, namely, her marriage certificate, if not deliberately fraudulent, is found to possess "similar fault" in that she thereby increased her age by a full twenty years—acts which are totally inconsistent with good faith or honest mistake.

Tr. 17.

The mere existence of this earlier document, the original of which was never produced to verify the alleged discrepancy, coupled with the claimant's failure to produce it in her application for benefits does not amount to substantial evidence of fraud or similar fault. Although specific fraudulent intent is not required for such a finding, there must at least be some evidence that the marriage certificate was *knowingly* concealed.

According to the regulations, a marriage certificate may be used as evidence of date of birth where public or church records established or recorded before age five are unavailable, 20 C.F.R. § 404.703(c). However, this is only one in a long list of items which may be utilized. In fact, the plaintiff submitted several documents acceptable under this regulation. It is not apparent from the record whether or not plaintiff knew or remembered the age that was noted on her marriage certificate. Under these circumstances, I cannot conclude that the applicant, Mrs. Delikosta, was at fault.

The Secretary argues that there was sufficient evidence of fraud or similar fault because the proof given by plaintiff of her date of birth consisted of orders and records obtained on her own petition shortly before her application for wife's benefits. The inference drawn was that of collusion on the part of the plaintiff, those who testified on her behalf in Greece, and several Greek officials. There is no evidence of collusion, however. It is equally plausible, as plaintiff argues, that the applicant only sought to establish her date of birth in 1954 because it was only then that it became important; she needed proof of her date of birth to establish her eligibility for benefits.

 In sum, there is no evidence of collusion other than the timing of the applicant's petitions to establish her date of birth. Moreover, there is no evidence in the record of a *knowing* concealment of the 1931 marriage certificate by the plaintiff. I find, therefore, that there was not substantial evidence of fraud or similar fault before the Administrative Law Judge and that the applicant's benefit determination was improperly re-opened.[4]

---

4. Although I have found that there was not "substantial evidence" of fraud or similar fault for the purposes of reopening, I question whether or not the Secretary should be held to a higher standard of proof to require a recovery more than four years after a final determination.

The standard of proof in an administrative hearing is generally preponderance of the evidence. In certain extraordinary situations, however, the administration has been held to a higher standard of proof. For example, the Government in a deportation hearing is required "to establish its allegations by clear, unequivocal, and convincing evidence" *Woodby v. Immigration and Naturalization Service*, 385 U.S. 276, 285, 87 S.Ct. 483, 487–88, 17 L.Ed.2d 362 (1966). This higher standard is required, according to the Court, because of:

> the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no contemporary identification. *Id.*

Similarly, the District of Columbia Circuit required a higher standard of proof in a securities fraud case where the petitioner broker-dealer was deprived of its broker-dealer and investment adviser registration, its membership in the National Association of Securities Dealers, and barred from association with any broker or dealer. The Court recognizing the seriousness of the deprivation, refused to apply the "clear, unequivocal and convincing" standard of *Woodby* but did apply the "clear and convincing" standard used in civil fraud cases. *Collins Securities Corporation v. Securities and Exchange Commission*, 183 U.S.App.D.C. 301, 562 F.2d 820 (D.C.Cir. 1977).

In the instant case, the Secretary is likewise alleging fraud the consequences of which are likely as serious to Mrs. Delikosta as the deprivations in *Collins Securities Corporation* were

In accordance with the above findings, the decision of the Secretary is reversed.

to the petitioner therein. Mrs. Delikosta is being deprived of her sustenance at the age of 90 (or 70). Under these circumstances, I believe that the Secretary should be held to a "clear and convincing" standard of proof.